**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
TIMOTHY J. SULLIVAN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-4560
Fax (410) 962-3630

February 22, 2013

LETTER TO COUNSEL:

RE:   *Roger L. Edney v. Michael J. Astrue, Commissioner, Social Security Administration*;
      Civil No. TJS-12-0473

Dear Counsel:

      This matter is before me by the parties' consent. (ECF Nos. 6, 10). On February 15, 2012, Plaintiff Roger L. Edney ("Mr. Edney") petitioned this Court to review the Social Security Administration's final decision to deny his claim for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). (ECF No. 1). I have considered Mr. Edney's Motion for Judgment on the Pleadings and the Commissioner's Motion for Summary Judgment. (ECF Nos. 12, 16). I find that no hearing is necessary. Local Rule 105.6. This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed the proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). For the reasons that follow, I will grant the Commissioner's motion and deny the Plaintiff's motion. This letter explains my rationale.

      Mr. Edney applied for SSI and DIB on September 6, 2007, alleging disability commencing April 21, 2007. (Tr. 222-223, 226-232). Mr. Edney's claims were denied initially on December 17, 2007, and upon reconsideration on February 14, 2008. (Tr. 133-137, 139-142). A hearing was held on January 28, 2009 before an Administrative Law Judge ("ALJ"). (Tr. 26-61). Following the hearing, on April 24, 2009, the ALJ determined that Mr. Edney was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 88-102). The Appeals Council granted Mr. Edney's request for review of the ALJ's decision, and on June 11, 2010 remanded the claim for a new hearing and decision, with instructions. (Tr. 103-107). A second hearing was held before an ALJ on June 8, 2011. (Tr. 62-83). On July 13, 2011, the ALJ issued a written decision finding that Mr. Edney was not disabled. (Tr. 108-125). On December 23, 2011, the Appeals Council denied Mr. Edney's request for further review of the ALJ's decision. (Tr. 6-10). On March 6, 2012, the Appeals Council again denied Mr. Edney's request for review after considering new evidence. (Tr. 1-5). The ALJ's decision dated July 13, 2011 constitutes the final, reviewable decision of the agency.

      The ALJ evaluated Mr. Edney's claim for benefits using the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Mr. Edney was not engaged in substantial gainful activity, and had not been engaged in substantial gainful activity since April 21, 2007. (Tr. 115). At step two, the ALJ found that Mr. Edney suffered from the severe impairments of mild cervical degenerative disc disease and

chronic obstructive pulmonary disease ("COPD"). (Tr. 115). At step three, the ALJ found that Mr. Edney's impairments, separately and in combination, failed to meet or equal in severity any listed impairment. (Tr. 116-117).

The ALJ then determined that, despite Mr. Edney's severe impairments, he retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he must avoid even moderate exposure to temperature extremes, humidity, dusts, odors, gases, poor ventilation, and hazards, and is limited to occasional postural maneuvers, but must avoid overhead work and climbing on ladders, ropes and scaffolds

(Tr. 117).

At step four, the ALJ determined that Mr. Edney "is capable of performing past relevant work as a protective uniform issuer," and that the work was compatible with his RFC. (Tr. 124). Alternatively, at step five, the ALJ determined that considering Mr. Edney's "age, education, work experience and residual functional capacity, there are other jobs that exist in significant numbers that [he] also can perform." (Tr. 124). In either case, the ALJ found that Mr. Edney was not disabled.

Mr. Edney presents several arguments on appeal. First, Mr. Edney contends that the ALJ failed to properly weigh and assess opinion evidence provided by treating physicians. (ECF No. 13 at 13). Second, Mr. Edney argues that the ALJ failed to properly evaluate his credibility. (ECF No. 13 at 18). Third, Mr. Edney argues that the ALJ's hypothetical questions to the vocational expert ("VE") were not based on consideration of all of Mr. Edney's impairments, and that the ALJ's reliance on the VE's testimony was misplaced. (ECF No. 13 at 21). I will address each of these arguments in turn.

First, Mr. Edney argues that the ALJ failed to properly weigh the opinions of his treating physicians and gave too much weight to the opinions of non-examining physicians. The opinion of a treating physician is entitled to controlling weight when two conditions are met: 1) it is well-supported by medically acceptable clinical laboratory diagnostic techniques and 2) it is consistent with other substantial evidence in the record. *See Craig*, 76 F.3d at 590; see also 20 C.F.R. §§ 404.1527(c), 416.927(c).[1] Federal regulations require an ALJ to assess a number of factors when considering what weight to assign to the medical opinions presented. 20 C.F.R. §§ 404.1527(c), 416.927(c). While treating source opinions on issues reserved to the Commissioner, such as determining a claimant's RFC, are not entitled to controlling weight, the ALJ must still evaluate all of the evidence in the case record to determine the extent to which the physician's opinion is supported by the record as a whole. *Id*. These factors include: (1) the examining relationship between the physician and the claimant; (2) the treatment relationship between the physician and the claimant; (3) the extent to which a medical opinion is supported

---

[1] Effective March 26, 2012, the Commissioner's regulations concerning medical opinions were revised, but without substantive change.

by relevant evidence; (4) the consistency of a medical opinion with the record as a whole; and, (5) whether the physician's opinion relates to an area in which they are a specialist. *Id*.

While the ALJ must generally give more weight to a treating physician's opinion, *see* 20 C.F.R. §§ 404.1527(c), 416.927(c), where a treating physician's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Craig*, 76 F.3d at 590; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Specifically, an ALJ may attribute little weight to a treating source opinion when it is unsupported, inconsistent with other evidence in the record, or based on a short term relationship. *Id*.; *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) ("The ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence[.]") The ALJ is also not required to give controlling weight to a treating physician's opinion on the ultimate issue of disability. 20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96–5p, 1996 WL 374183. Pursuant to 20 C.F.R. §§ 404.1527(e)(2)(ii) and 416.927(e)(2)(ii), the ALJ is required to "explain in the decision the weight given to . . . any opinions from treating sources, nonteaching sources, and other non-examining sources who do not work for [the Social Security Administration]."

In this case, contrary to Mr. Edney's argument, the ALJ appropriately considered the opinions of three of Mr. Edney's treating physicians. The ALJ found that some of the opinions of Dr. Rolando Najera (that Mr. Edney was unable to work from July 9, 2007 through July 8, 2008; that he could sit, walk or stand for up to one hour; and, that he has a less than sedentary RFC) were inconsistent with the objective medical evidence in the record, conclusory, based primarily on Mr. Edney's subjective complaints, and were outside the range of his expertise as a family practice physician. (Tr. 123). In particular, the ALJ found that an April 22, 2008 MRI (Tr. 534) and a February 20, 2009 CT scan (Tr. 123, 534, 758) were inconsistent with Dr. Najera's opinions. (Tr. 123). Dr. Najera's opinions regarding Mr. Edney's ability to climb or crawl, and his ability to tolerate extreme temperatures, humidity, chemicals, dust, fumes, odors and height, however, were adopted by the ALJ and used in her RFC determination. There is more than substantial evidence to support the ALJ's determination that Dr. Najera's opinions were entitled to less than controlling weight.

With respect to Dr. Carlos E. Gopez, the ALJ found that his opinions (that Mr. Edney was not able to perform full-time competitive work and that he should not work for at least 6 months during 2009 while awaiting the opinion of a neurosurgeon) were entitled to some weight, as they were "generated during a period of consultation and treatment." (Tr. 123). However, Dr. Gopez's ultimate conclusions that Mr. Edney is disabled, and is not able to perform full-time competitive work are administrative findings, dispositive to the case, and are reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ appropriately assigned "some weight" to Dr. Gopez's opinion, but went on to determine that his opinion was not supported by all of the other evidence of the record, as the law requires. *See id.*; SSR 96-5p, 1996 WL 374183, at *3. The ALJ properly evaluated Dr. Gopez's opinion, and her treatment of the opinion is supported by substantial evidence.

The ALJ assigned "little weight" to Dr. Melcher E. Madarang's opinion that Mr. Edney maintains a "less than sedentary residual functional capacity . . . [but] would only be absent from

work less than once a month." (Tr. 123). The ALJ found that Dr. Madarang had only treated Mr. Edney on two occasions before forming this opinion, and that the opinion was inconsistent with the objective medical evidence in the record, particularly an April 22, 2008 MRI and a February 20, 2009 CT scan. (Tr. 123). The ALJ appropriately considered Dr. Madarang's opinion, but determined that it was undermined by the "medical signs and laboratory findings" in the MRI and CT scan. Mr. Edney argues that the ALJ's consideration of the MRI and CT scan was improper, and amounts to a substitution of the ALJ's opinion for that of a treating physician. This argument is without merit, and the cases cited by Mr. Edney in support are inapposite. In each of these cases, the decisions of ALJs were reversed because the ALJs rejected the available medical evidence, and determined an RFC based on the ALJ's opinion alone, and without substantial evidence to support the opinion. *Barton v. Astrue*, 495 F. Supp. 2d 504, 509 (D. Md. 2007); *Wilson v. Heckler*, 743 F.2d 218, 221 (4th Cir. 1984). Here, the ALJ considered the opinions of the treating physicians in relation to other medical evidence in the record, as required by the regulations. The ALJ appropriately considered the MRI and the CT scan. The ALJ's determination as to the weight to give Dr. Madarang's opinion is supported by substantial evidence.

The ALJ assigned "significant weight" to Dr. A. Serpick and Dr. S. Brahim's opinions. Mr. Edney argues that the ALJ should not have assigned such weight to the opinions of these State agency medical consultants because they did not examine Mr. Edney, and because their opinions do not take into account medical records created after their opinion was generated. Under 20 C.F.R. §§ 416.927 and 404.1527, the ALJ was required to consider the opinions of the non-examining medical consultants in light of the same factors used to consider the opinions of examining physicians, and indicate the weight given to each opinion. The ALJ did just that. Mr. Edney's citation to authority that the opinion of a non-examining source cannot form the sole basis for substantial evidence supporting a denial of benefits does not compel a different conclusion here. In this case, the non-examining experts' opinions are supported by substantial evidence in the record, and are consistent with evidence that the ALJ deemed the most credible. In addition, the ALJ made clear in her findings that she assigned weight to medical opinions besides those of the non-examining experts, and that her conclusions were not based on the opinions of the non-examining experts alone. The ALJ's consideration of Dr. Serpick and Dr. Brahim's opinions was proper.

Mr. Edney's next argument is that the ALJ failed to properly evaluate his credibility concerning the "intensity, persistence, or functionally limiting effects" of his symptoms. (ECF No. 13 at 18). When an ALJ evaluates a claimant's subjective complaints, the regulations provide a two-step evaluation process. 20 C.F.R. §§ 404.1529 and 416.929. First, the ALJ must determine whether the claimant has a medically determinable impairment capable of causing the symptoms alleged. *Id*. Next, the ALJ must evaluate to what extent the symptoms limit the claimant's functioning. *Id*. An ALJ's determination of a claimant's credibility must take into consideration a number of factors, in addition to other objective medical evidence. These factors include:

> 1. The individual's daily activities; 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. Factors that precipitate and aggravate the symptoms; 4. The type, dosage, effectiveness, and side effects of

any medication the individual takes or has taken to alleviate pain or other symptoms; 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-79, 1996 WL 374186.  An ALJ's findings regarding a claimant's credibility are entitled to great weight.  *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.")

Here, the ALJ determined that Mr. Edney's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent" they differ from the RFC determination.  (Tr. 118).  The ALJ supported her credibility determination with a discussion of her observations of Mr. Edney's ability to move about without a cane without problem during the hearing, the "strong odor of smoke about him," and his testimony that he continues to smoke contrary to medical advice.[2]  (Tr. 118).  In addition, it is evident that the ALJ considered Mr. Edney's medical records.  The ALJ considered Mr. Edney's report in November 2008 that he "receives about 100% pain relief from the pain medication [and] denies any sides effects to the pain medication" (Tr. 119, 638), as well as a January 2009 examination that "revealed normal cervical motion with minimal discomfort" (Tr. 120, 655).  These records are inconsistent with Mr. Edney's allegations of disabling pain.  The ALJ also considered medical records that were inconsistent with Mr. Edney's allegations of disabling lung and respiratory impairments.  (Tr. 119).  In December 2007, a CT scan demonstrated that Mr. Edney's left lung mass had decreased in size (Tr. 119), and subsequent examinations of Mr. Edney's chest showed COPD "without any active disease."  (Tr. 119, 576).  The ALJ's conclusions with respect to her determination of Mr. Edney's credibility are supported by substantial evidence.

Finally, Mr. Edney argues that the ALJ improperly relied on the VE's testimony.  Mr. Edney contends that, assuming the ALJ's RFC finding is flawed for failing to properly weigh the medical opinion evidence, the VE's testimony is necessarily flawed, because it was in response to hypothetical questions that considered only the ALJ's RFC findings, and not the opinions of the medical experts that the ALJ rejected.  The Commissioner employs vocational experts to offer evidence as to whether a claimant possesses the residual functional capacity to meet the

---

[2] Mr. Edney argues that the ALJ's consideration of his smoking against medical advice was improper. (ECF 13 at 21).  I disagree.  Mr. Edney was repeatedly advised to stop smoking cigarettes.  This advice was given in connection with his treatment for COPD.  Despite these warnings, Mr. Edney continued to smoke cigarettes.  (Tr. 118, 396, 458, 514, 570, 707, 748).  This Court has held that an ALJ may consider a claimant's "failure to stop smoking in determining credibility when medical evidence shows that doctors recommended smoking cessation and that smoking impacted conditions. . . ."  *Collison v. Astrue*, No. PWG-08-234, 2009 WL 3216658, at *3 (D. Md. Sept. 30, 2009) (citing *Mouser v. Astrue*, 545 F.3d 634 (8th Cir. 2008).

5

demands of past relevant work or adjust to other existing work. 20 C.F.R. §§ 404.1560(b)-(c), 416.960(b)-(c). The vocational expert may respond to a hypothetical question about a person "with the physical and mental limitations imposed by the claimant's medical impairment(s)." 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006) (quoting *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989)). A hypothetical question is "unimpeachable if it adequately reflects a residual functional capacity for which the ALJ had sufficient evidence." *Fisher v. Barnhart*, 181 F. App'x 359, 364 (4th Cir. 2006) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005)) (internal quotation marks omitted). This argument fails because, as set forth above, the ALJ properly weighed the medical opinion evidence in determining the RFC. The VE's testimony was in response to questions that fairly set out all of Mr. Edney's impairments, and the testimony was based upon a consideration of all the evidence in the record. The ALJ properly relied on this testimony.

For the reasons set forth herein, Mr. Edney's Motion for Judgment on the Pleadings (ECF No. 13) will be DENIED, and the Commissioner's Motion for Summary Judgment (ECF No. 16) will be GRANTED. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

                                                          Sincerely yours,

                                                         /s/

                                                     Timothy J. Sullivan
                                                   United States Magistrate Judge